OTIS T. BRADLEY'S APPEAL FROM PROBATE
(6884)
(6885)

BORDEN, DALY and FOTI, Js.

Argued February 1—decision released August 29, 1989

*Augustus R. Southworth III,* with whom was *Mark W. Dost,* for the appellant (plaintiff).

*William C. Franklin,* for the appellees (defendant Patricia P. Smith et al.).

BORDEN, J. In these combined cases the plaintiff appeals from the judgments of the trial court dismissing his appeals from the Probate Court. The plaintiff was the named executor of the estate of the decedent, Ruth J. Robbins. The defendants were numerous nieces and nephews of the decedent, three of whom, Patricia P.

Smith, Jennifer Place, and Ruth Carr, brought the motions to dismiss the plaintiff's appeals from probate. The plaintiff claims that the trial court erred (1) in failing to take as true, for the purpose of deciding the motions to dismiss, the allegations of aggrievement contained in the plaintiff's motions to appeal, (2) in finding that the issues in one of his appeals from certain orders of the Probate Court were moot, and (3) in finding that the plaintiff was not aggrieved by the Probate Court's decree assuming jurisdiction over the estate and its decree appointing Howard C. Carr as executor in the plaintiff's stead. We find error in part.

Although the plaintiff filed two separate appeals in the trial court from separate orders of the Probate Court, the Probate Court orders all derived from the same probate estate, and the defendants' motions to dismiss the two appeals from probate were decided together by the trial court. We therefore consider the trial court's rulings and the plaintiff's claims of error together, as applying to the sole probate estate involved in this case.

The plaintiff's first appeal was from the Probate Court's orders granting temporary administration of the decedent's estate to the First National Bank of Litchfield, finding that the decedent was domiciled in Connecticut when she died, and, as an alternate basis of jurisdiction, accepting jurisdiction over the decedent's estate pursuant to General Statutes § 45-170.[1] The plaintiff's second appeal was from the Probate

---

[1] In general, General Statutes § 45-170 (a) provides that a Connecticut Probate Court may probate the will of a testator who was not domiciled in Connecticut at her death if the testator last resided in the probate district, if any of the testator's property or bank accounts are situated there, if any of the named executors or trustees reside or have an office there, if any cause of action of the testator arose there or if any debtor of the testator resides or has an office there. See General Statutes § 45-170.

Court's orders admitting the decedent's will to probate and appointing Carr as executor of the decedent's estate.

The defendants moved to dismiss the first appeal for lack of subject matter jurisdiction on the bases (1) that the plaintiff was not aggrieved, and (2) that subsequent actions of the plaintiff and the Probate Court rendered the decrees appealed from to be moot. The defendants moved to dismiss the second appeal for lack of subject matter jurisdiction on the basis that the plaintiff was not aggrieved by the decision of the Probate Court. Both motions to dismiss were accompanied by a memorandum of law alleging the facts on which the defendants relied for their claims of lack of aggrievement and mootness, and offering legal analysis based on those alleged facts.

The plaintiff filed a memorandum of law in opposition that alleged facts and offered legal analysis in support of his factual version of events. Some of the facts he alleged were substantially similar to some of the facts alleged by the defendants. Other facts were not admitted or were squarely disputed. The matter was heard at short calendar, where no testimony was taken but some documentary evidence was submitted to the court.

In a consolidated memorandum of decision on both motions to dismiss, the trial court found the following facts. The decedent resided in Litchfield from February, 1985, until her death on March 15, 1987. Shortly after her death, her niece, the defendant Patricia P. Smith, filed an application for probate of a will executed by the decedent. Smith submitted the original document to the Probate Court for the district of Litchfield. The will named the plaintiff, Otis T. Bradley, as executor and as a trustee of certain trusts created

under the will for the benefit of his children by Smith, who was his former wife. The plaintiff is not a beneficiary under the will.

The Probate Court scheduled a hearing on May 6, 1987, to act on the application to admit the will to probate. The plaintiff appeared through counsel "for the limited purpose of contesting jurisdiction." The plaintiff argued that the Probate Court was without jurisdiction to probate the estate. The Probate Court did not reach a decision on the issues at the hearing, and the matter was continued until June 17, 1987.

The trial court further found that subsequent to the hearing on May 6, 1987, the plaintiff filed in the Surrogate's Court of New York County, New York, an application to admit a copy of the will to probate and to have himself appointed as preliminary executor of the estate. The New York court granted him preliminary letters testamentary on the decedent's estate on May 19, 1987.[2] On June 17, 1987, the Probate Court scheduled a hearing to determine whether the court had jurisdiction to probate the estate. At this hearing, the plaintiff through counsel contested jurisdiction. By decree dated June 17, 1987, the Litchfield Probate Court concluded that it had jurisdiction pursuant to General Statutes § 45-170 (a). See footnote 1, supra.

The trial court also found that on June 29, 1987, Smith had submitted an amended application for probate of the will, seeking the appointment of Howard C. Carr as executor in lieu of the appointment of the plaintiff. The ninth article of the will provided that "[i]f [Otis T. Bradley] fails to qualify or ceases to remain in office, I appoint my friend, Howard C. Carr, executor in his place." The trial court further found that on August 12,

---

[2] Although the trial court found only that the plaintiff "asserts that" he was so appointed, at oral argument in this court the defendants did not dispute the fact of the plaintiff's appointment in New York.

1987, the plaintiff had appeared and agreed that the will could be admitted to probate, but that he had objected to the appointment of Carr as executor in his stead. On August 12, 1987, the Probate Court admitted the will to probate and appointed Carr as executor, finding the plaintiff unqualified to act as executor due to a conflict of interest.

The trial court concluded that the order of the Probate Court appointing a temporary administrator was moot, and that the plaintiff was not aggrieved by the other orders of the Probate Court. The court therefore granted the defendants' motions to dismiss. These appeals followed.

## I

The plaintiff first claims that the trial court erred by not taking as true the factual allegations in his motions for appeal when it decided the defendants' motions to dismiss. We disagree.

The plaintiff bases this claim on *Park Construction Co.* v. *Knapp,* 150 Conn. 588, 591–92, 192 A.2d 635 (1963), where the court discussed the difference between a motion to erase and a plea in abatement under our prior practice, and held that a motion to erase an appeal reached only defects appearing on the face of the record and had to be decided on the record alone. The plaintiff argues that because the prior motion to erase was supplanted by the motion to dismiss; Practice Book § 143; the *Park* holding, which concerned motions to erase, is still viable and is applicable to motions to dismiss.

This argument fails for several reasons, all of which follow from the fact that the prior motion to erase and the present motion to dismiss differ in several important aspects. A motion to dismiss is used to assert jurisdictional flaws that appear on the record or that are

alleged by the defendant in a supporting affidavit "as to facts not apparent on the record." Practice Book § 143. The motion to erase, on the other hand, reached only defects apparent on the face of the record. *Park Construction Co.* v. *Knapp,* supra. In that respect, the motion to erase served "the same purpose as a demurrer"; id.; and the demurrer has been replaced by the motion to strike. *Cavallo* v. *Derby Savings Bank,* 188 Conn. 281, 283, 449 A.2d 986 (1982).

The plaintiff contends that the trial court, in deciding a motion to dismiss an appeal from probate on the ground of aggrievement, should have assumed the truth of the allegations in the motion to appeal, and decided only the narrow question of whether those facts were legally sufficient to constitute aggrievement. That procedure, however, is appropriate not for a motion to dismiss, but for a motion to strike. *Merrimac Associates, Inc.* v. *DiSesa,* 180 Conn. 511, 513 n.3, 429 A.2d 967 (1980). In the present case, "the question before the trial court was whether, as a matter of fact, the plaintiff was aggrieved, a precondition to the right of appeal and the jurisdiction of the Superior Court." Id., 513. The trial court's consideration of this motion was not limited to facts appearing on the face of the record; Practice Book § 143; and, accordingly, under the circumstances of this case, the court was not obliged to assume the truth of the plaintiff's factual allegations in the motion to appeal. See *Merrimac Associates, Inc.* v. *DiSesa,* supra, 513–17.

## II

We next turn to the plaintiff's claim that the trial court erred in determining that the issues in his first appeal from probate were moot. We agree with the trial court that the probate order appointing a temporary administrator was moot. We also agree with the plaintiff, however, that the trial court erred in determin-

ing that the plaintiff's challenge to the Probate Court's acceptance of jurisdiction under General Statutes § 45-170 (a) was moot.

We first consider the mootness of the appointment of a temporary administrator. On June 9, 1987, the Probate Court appointed the First National Bank of Litchfield as temporary administrator. The plaintiff appealed this decree to the Superior Court on July 31. It is undisputed that on August 12, 1987, the Probate Court found Carr qualified as executor, and that six days later the bank submitted a notarized resignation as temporary administrator. In its resignation, the bank represented to the court that "[n]o funds or property of any kind were transferred to said First National Bank of Litchfield as temporary administrator."

The plaintiff maintains that the issue of the bank's appointment as temporary administrator is not moot because the bank has not yet filed a formal sworn accounting pursuant to General Statutes § 45-263 (b).[3] Because the bank has not yet accounted, the plaintiff argues, there exists a possibility that the bank has interfered with the plaintiff's administration of the estate, thus burdening the estate with undue expenses.

The plaintiff does not dispute the bank's assertion that no estate assets passed through its hands. Rather, the plaintiff rests his argument on the virtually nonexistent possibility that a sworn accounting by the bank would reveal some as yet unknown "interference" by the bank with the plaintiff's administration of the estate. Even if we were to take this possibility seriously, the plaintiff's argument is legally unsound. Contrary

---

[3] General Statutes § 45-263 (b) provides: "RESIGNATION OF FIDUCIARY. The court of probate, after notice and hearing, may accept or reject the written resignation of any fiduciary, but such resignation shall not be accepted until such fiduciary has fully and finally accounted for the administration of his trust to the acceptance of such court."

to the plaintiff's assertion, the responsibilities of a temporary administrator upon resigning are not defined in General Statutes § 45-263, which concerns the resignation or removal of fiduciaries generally. Rather, the powers and duties of temporary administrators are specifically set forth in General Statutes § 45-249d.[4] The specific provisions of this section take precedence over the more general provisions of § 45-263. See *Healey* v. *Freedom of Information Commission,* 18 Conn. App. 212, 217, 557 A.2d 561 (1989).

The plaintiff's argument, namely, that the bank's resignation is ineffective until the bank has accounted, is drawn from the language of § 45-263 (b), which governs the resignation of fiduciaries. No such requirement exists in § 45-249d (e). Section 45-249d (e) requires merely that, upon the qualification of an exec-

[4] General Statutes § 45-249d provides in pertinent part: "POWERS AND DUTIES OF TEMPORARY APPOINTEE. REMOVAL. ACCOUNT. (a) The temporary administrator or officer appointed pursuant to the provisions of section 45-249c shall take immediate possession of all the real and personal property of the deceased, collect the rents, debts and income thereof and do any additional acts necessary for the preservation of the estate that the court authorizes.

"(b) Such administrator or officer may be authorized by the court to sell any personal property of the estate which is perishable in its nature or which the court finds cannot be retained to advantage, and may be further authorized to make up or complete any stock or materials in an unfinished state, and to continue any business, so far as may be necessary for the preservation of the same.

"(c) Such administrator or officer shall file forthwith under oath an inventory of all personal property of the deceased and, when ordered to do so, shall exhibit to the court an account of his actions.

"(d) Such administrator or officer may be removed by the court with or without notice and a successor appointed whenever such action appears to the court advisable.

"(e) Upon the appointment and qualification of the administrator or the administrator with the will annexed or the qualification of the executor, such temporary administrator or such officer shall exhibit forthwith to the court an account of his trust and deliver to the administrator, executor or administrator with the will annexed all of the estate of the deceased remaining in his hands."

utor, the temporary administrator "shall exhibit forthwith to the court an account of his trust and deliver to the . . . executor . . . all of the estate of the deceased remaining in his hands." Thus, the termination of the temporary administrator's fiduciary power over the estate is not contingent upon the production of an accounting, but automatically terminates upon the qualification of the executor. Id. All that remains for the temporary administrator to do after an executor is qualified is to exhibit an accounting to the court and to deliver any estate assets in his possession to the executor. If there are no assets and nothing to account for, the temporary administrator has fulfilled its duties by filing an appropriate document with the Probate Court so indicating.

"This court may decide a case only when it presents a live controversy which can be resolved by relief that is within the court's power to grant." *Schroeter* v. *Salvati,* 6 Conn. App. 622, 623, 506 A.2d 1083 (1986). The plaintiff's appeal of the appointment of the bank as temporary administrator fails this test. Even if we were to find that the bank's appointment somehow constituted error, the bank's legally valid resignation deprives this court of the ability to order any practical relief. The plaintiff's appeal from the order of the bank's appointment is moot.

We turn, therefore, to the claim of the plaintiff that the trial court erred in determining that the issue of the Probate Court's assumption of jurisdiction under General Statutes § 45-170 (a) was moot. The propriety of the trial court's determination of mootness of this claim hinges on the validity of the trial court's finding that "[o]n August 12, 1987, the plaintiff appeared and agreed that the will could be admitted to probate; however, the plaintiff objected to the appointment of Howard C. Carr in his stead." If in fact the plaintiff had consented to the admission of the will under Gen-

eral Statutes § 45-170 (a), arguably he could not later be heard to challenge that admission on appeal.[5] We conclude, however, that the court's finding cannot stand because the peculiar procedural presentation of the case in the trial court left that finding without an evidential basis.

As we noted above, the defendants' motions to dismiss were presented to the court pursuant to factual and legal memoranda of the parties. Although the plaintiff did not file a transcript of the trial court proceedings, we were informed in oral argument in this court that the defendants introduced copies of certain Probate Court documents but that no testimony was heard by the trial court. Those documents do not support the court's finding that the plaintiff consented to the admission of the will under § 45-170 (a).

Ordinarily, the failure of an appellant to produce an adequate record—in this case, a transcript of the trial court proceedings—precludes him from challenging on appeal a factual determination of the trial court. *Katz Realty, Inc.* v. *Norwalk Fabricators, Inc.*, 14 Conn. App. 396, 402, 541 A.2d 519 (1988). Two considerations lead us, however, to excuse the plaintiff from the consequences of that rule. First, in the trial court it was the defendants who asserted the factual bases of their mootness claims, and thus they had the obligation to file "supporting affidavits as to facts not apparent on the record." Practice Book § 143. Instead, their memorandum simply recited a number of facts, some of which were disputed by the plaintiff. Second, it is clear from the record that the court resolved a critical disputed fact—namely, whether the plaintiff consented to the admission of the will under General Statutes

---

[5] In that event, analytically the plaintiff's claim would be more properly viewed under a lack of aggrievement rather than mootness rubric, but the result—dismissal for lack of subject matter jurisdiction—would be the same, if it were concluded that he lacked aggrievement.

§ 45-170 (a)—solely by reference to the two competing memoranda, and not by an evidentiary hearing.[6]

"It is fundamental that when issues of fact are disputed, due process requires an evidentiary hearing, with the opportunity to present evidence and cross-examine witnesses. *Nelson* v. *Nelson,* 13 Conn. App. 355, 367, 536 A.2d 985 (1988); *Lampasona* v. *Jacobs,* 7 Conn. App. 639, 642–43, 509 A.2d 1075 (1986). Here, the court made a . . . critical factual [finding] based only on the briefs of the parties, supplemented by" the documents submitted to it. *Land Enterprises, Inc.* v. *Dorman,* 17 Conn. App. 4, 11–12, 549 A.2d 672 (1988). Accordingly, that finding cannot stand.

### III

We next address the plaintiff's final claim, that the trial court erred in finding that the plaintiff is not aggrieved by the Probate Court's decree assuming domiciliary jurisdiction and its decree appointing Carr executor instead of the plaintiff. We examine these claims in turn.

---

[6] The defendants' memorandum asserted, inter alia, that on August 12, 1987, "the Plaintiff through counsel participated in a hearing in which he made no objection to the admission of the will to probate but instead, argued that he rather than Howard C. Carr should be appointed executor. By arguing that the Plaintiff should be appointed as executor he not only rendered moot the question of whether the Probate Court had jurisdiction to administer the estate, he specifically requested that the Probate Court exercise its jurisdiction to appoint him executor under the Will."

The plaintiff's memorandum stated, inter alia, that on August 12, 1987, the Probate Court "admitted the will to probate, and found a possible conflict of interest, declined to appoint the [Plaintiff] Executor and instead appointed Defendant Carr as Executor." It further asserted that the "Court further declined to consider the Plaintiff's written objection and pre-hearing memorandum in support of his objection." He specifically pointed out that his "willingness to serve as Executor did not constitute a waiver of his position concerning the impropriety of the Court's acceptance of general jurisdiction over this Estate," and that he had maintained the position in the Probate Court that any jurisdiction in Connecticut would have been by way of ancillary jurisdiction; see General Statutes § 45-171; rather than under General Statutes § 45-170.

"To prosecute an appeal from a Probate Court decree, the plaintiff must be aggrieved by that decree. General Statutes § 45-288." *Zempsky's Appeal from Probate,* 6 Conn. App. 521, 524, 506 A.2d 1050, cert. denied, 200 Conn. 808, 512 A.2d 231 (1986). "[T]he existence of aggrievement depends upon 'whether there is a possibility . . . that some legally protected interest which [an appellant] has in the estate has been adversely affected.' *O'Leary v. McGuinness,* 140 Conn. 80, 83, 98 A.2d 660 (1953)." *Merrimac Associates, Inc.* v. *DiSesa,* supra, 516. The trial court determines the existence of aggrievement as a matter of fact. Id., 513.

The plaintiff claims that he is aggrieved in his capacity as executor of the estate, as trustee of certain residuary trusts established under the will and as a creditor of the estate. The plaintiff's several theories of aggrievement all proceed from the same alleged harm, namely, the additional expense and inconvenience caused by the duplicative probate administration of the estate in New York and in Connecticut.

"We must determine whether, under the facts found, the plaintiff had an interest in the proceedings below sufficient to confer upon [him] standing under General Statutes § 45-288." Id., 517. We first address the plaintiff's claim of aggrievement concerning the Probate Court's decree assuming jurisdiction over the estate.

In its memorandum of decision on the defendants' motions to dismiss, the trial court found that the dual administration of the estate arose from "the plaintiff's unilateral action in instituting proceedings in New York . . . despite the pending proceeding in . . . Connecticut." The court held that the plaintiff "may not now rely solely upon the duplication of administration and appointment as his basis for aggrievement," when "the problems of duplication of administration and appointment were created by the plaintiff's instituting proceedings in New York."

We cannot sustain the trial court's decision as it relates to the appeal of the probate decree asserting jurisdiction over the estate. That the plaintiff instituted a probate proceeding in New York is irrelevant to the issue of whether he was aggrieved by the action of the Connecticut Probate Court. The possibility that the Probate Court's decree adversely affected "some legally protected interest which [the plaintiff] has in the estate"; id., 516; is not reduced or eliminated by the plaintiff's instituting a probate proceeding in New York. In the absence of a claim that the plaintiff's action in New York, based on his belief of the decedent's domicile there, lacked any colorable basis, we see no justification for barring him from challenging probate jurisdiction here simply because he asserted it there. To rule otherwise would make aggrievement turn on a race to the respective courthouses.

We last turn to the plaintiff's claim that the trial court erred in concluding that he was not aggrieved by the Probate Court's decree appointing Carr executor of the estate. We agree.

The plaintiff claimed aggrievement, in his capacity as preliminary executor appointed by the New York Surrogate's Court,[7] by Carr's appointment as executor in Connecticut. The plaintiff claimed in his motion for appeal to the trial court that Carr's appointment "will result in two different fiduciaries, having been appointed by different courts in different states, taking steps to assemble, administer, and control the assets of the Decedent's estate and to take all other steps required in settling the Decedent's estate." This dual

[7] The plaintiff also claimed that he was aggrieved in his capacity as testamentary trustee of certain trusts created under the will, and as a creditor of the estate. Because we find the plaintiff's claim of aggrievement in his capacity as executor to be dispositive, we do not address the plaintiff's alternative theories.

administration, the plaintiff claimed, would cause the estate significantly greater expense and delay.

The trial court found that the plaintiff was not aggrieved by Carr's appointment. The court relied upon *Avery's Appeal,* 117 Conn. 201, 167 A. 544 (1933), which held that an executor may not appeal from a decree removing him as fiduciary, because the removal decree, which is not vacated by the appeal, terminates his representative capacity, and he is not aggrieved, except in feelings, in his individual capacity. The trial court in this case, finding that the plaintiff had never been appointed executor in Connecticut, read *Avery's Appeal* to say that one whose only interest in an estate is in being named executor is not aggrieved by a decree appointing someone else to that position. See also *Zempsky's Appeal from Probate,* supra, 525. Were the plaintiff's sole basis for aggrievement his personal desire to be named the executor, the trial court's analysis would be correct.

The court's finding that the plaintiff could not have been aggrieved in any fiduciary capacity by the Probate Court's decree because he had never been appointed to such a capacity, however, stands in direct contradiction to the fact that the plaintiff was appointed preliminary executor of the estate in New York. Thus, the plaintiff appeared in the Litchfield Probate Court vested with a fiduciary capacity that was not within the power of the Litchfield Probate Court to revoke. *Avery's Appeal,* supra, is therefore inapposite to today's case. " '[P]ersons as to whom a right of appeal is recognized are those who are acting in a fiduciary or representative capacity under a subsisting appointment *which has not been terminated, by revocation or otherwise,* and who therefore are under present duty to protect the estate from diversion. *Smith* v. *Sherman,* 58 Mass. 408 [1819].' (Emphasis added.) *Avery's Appeal,* supra, 204–205." *Zempsky's Appeal from Probate,*

supra. By virtue of his capacity as executor in New York, the plaintiff was aggrieved by the decree appointing Carr executor in Connecticut.[8]

There is error in each appeal, the judgment is set aside and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[8] At oral argument in this court, the parties indicated that, despite the dual appointments, the New York proceedings have been stayed, that the administration of the decedent's estate has proceeded in Connecticut and is nearly completed, and that the testamentary trusts under the will; see footnote 7, supra; would not be established because all of the beneficiaries would soon be beyond the age for termination of any such trust. It may well be, therefore, that the risk of dual administration expenses has evaporated, and that the issues in this case have *now* become moot. Although we cannot conclusively make that determination from this record or from the representations made to us, that does not preclude the trial court from inquiring further into mootness on the remand.