502 So.2d 1100 (1987)
Arthur SHORT
v.
OTIS ELEVATOR CO., Panarem, Inc. and Liberty Mutual Insurance Co.
No. CA-5597.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1987.
Writ Denied March 13, 1987.
*1101 Nancy G. Collins, Donna R. Moliere, Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, for plaintiff.
C. Edgar Cloutier, Christovich & Kearney, New Orleans, for defendants.
Before BARRY, WILLIAMS and ARMSTRONG, JJ.
BARRY, Judge.
Otis Elevator Company and its insurer appeal a jury finding that the company was 60% at fault under strict liability and negligence theories for plaintiff's injuries.
On June 15, 1984 Arthur C. Short, a court reporter, tripped and fell while exiting an automatic elevator on the 25th floor of the Pan American office building. Short and his companion, Carol Leff, were the only occupants in the elevator. Short left first and Leff testified that after his fall she noticed the elevator had stopped four to six inches below the floor level. She stepped up to get out of the car to assist Short who had struck his face against his stenographic machine case. Short continued his workday and did not report the incident because he did not believe he was injured.
The next morning Short had a swollen jaw, headache, toothache and backache. He was eventually examined by an ear, nose and throat specialist, two dentists and an orthopedic surgeon. Dr. Witherspoon, a dentist, diagnosed a spasm of the masticulatory muscles causing secondary temporomandibular joint disfunction and prescribed muscle relaxers and pain medication. He testified that Short's traumatic injury resulted from his fall and that chewing, swallowing and speaking caused him great pain. As a result of the pain and numerous dental appointments, Short missed several freelance job assignments and court work.
Short sued Otis, its insurer, Liberty Mutual Insurance Company, the owner of the building, Pan American Life Insurance Company, and Panarem, Inc., the management company for the building.
Short was awarded $16,000 for pain and suffering, $5,200 for mental anguish and distress, $3,000 for lost wages and $800 for medical expenses. The jury unanimously allocated fault at 60% to Otis and 40% to Pan American/Panarem. Only Otis appealed.
Otis specifies the jury erred by finding: that the elevator was defective or inadequately maintained, that Short failed to prove products liability and negligence, and that Short was not at fault.
The standard of proof in products liability cases was set forth in Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980) at page 589:
Thus, under Weber[1], the plaintiff in a products liability suit must only prove *1102 that the product was defective, i.e., unreasonably dangerous to normal use; that the product was in normal use at the time the injury occurred; that the product's defect caused his injury; and that the injury might reasonably have been anticipated by the manufacturer. It is unnecessary to prove that the manufacturer was negligent because he knew or should have known of the dangerous condition of the product at the time of the manufacture or sale. The focus is on the product itself and whether it is unreasonably dangerous to normal use ... Again, a balancing test is mandated: if the likelihood and gravity of harm outweigh the benefits and utility of the manufactured product, the product is unreasonably dangerous. If the product is unreasonably dangerous to normal use, the manufacturer is ultimately responsible to one injured in the course of that use.
Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986) mandated the use of the Hunt danger-utility balancing test and specified four theories for products liability recovery: (1) unreasonably dangerous per se; (2) unreasonably dangerous in construction and composition; (3) unreasonably dangerous because of failure to adequately warn about a danger inherent in the normal use of the product which is not within the knowledge of or obvious to the ordinary user; (4) unreasonably dangerous in design because (a) the danger outweighs the utility of the product, (b) alternative products are available to serve the same needs with less risk of harm, and (c) there are feasible ways to design the product with less harmful consequences.
Ms. Leff testified that the elevator stopped four to six inches below the floor. Ms. Mae Helen Boudreaux, a worker in the building, stated that six months prior to trial she tripped when the same elevator stopped three to five inches below the floor. James Restel, the building's manager, and Dr. Fred Liebkemann, an engineer, testified that an elevator's failure to stop level with a floor creates a tripping hazard. Mr. Restel said non-leveling had been a problem in the Pan Am building and admitted there were three complaints prior to the accident that the same elevator failed to level and two more after the incident. He notified Otis on each instance. Dr. Liebkemann testified that an elevator which fails to level within three-eighths of an inch violates the American National Safety Institute's standards.
The elevator was in regular service when it failed to properly level and the jury obviously concluded the floor disparity was the sole cause of the accident. Otis had been placed on notice about the problem (at least three times), thus, it had knowledge of the defect but did not correct it. The evidence shows that the elevator was inadequately maintained and could be considered defective. See Jackson v. Tri-State Elevator Co., Inc., 401 So.2d 538 (La.App. 3rd Cir.1981).[2]
While an elevator is convenient and beneficial to the Pan Am building's tenants, clients and employees, its utility is outweighed by the tripping hazard. The jury had ample evidence to conclude that the likelihood and gravity of the harm created by the elevator's repeated failure to level outweighed its social utility.
Otis argues that Short did not prove any of the theories for products liability recovery according to Halphen v. Johns-Manville Sales Corp., supra. We disagree. Halphen's third ground for recovery was the manufacturer's failure to adequately warn about a danger related to the way the product was designed. A manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of or obvious to the ordinary user. In performing this duty the manufacturer is held to the knowledge and *1103 skill of an expert and must keep abreast of scientific knowledge, discoveries and advances. The manufacturer further has a duty to test and inspect its product to the extent commensurate with the dangers involved. Halphen at 115.
Here the risk of harm was known to Otis, but was not obvious to the public. Despite its knowledge of the danger presented to passengers who fail to notice that an elevator has not stopped level with the floor, Otis did not warn of the known tripping hazard. Hunt v. City Stores, Inc., supra.
Otis argues that the elevator's failure to level was obvious to the ordinary passenger and contends the jury erred by failing to find some fault attributable to Short who failed to glance down while exiting the elevator.
Short testified he was looking forward and did not know about the elevator's unlevel condition until later when Ms. Leff brought it to his attention. She stated that she was watching Short and did not observe the four to six inch elevation difference until he tripped. She said if she had walked out first she probably would have fallen. Thus, the unlevel elevator was not obvious to Short or Ms. Leff before the accident. The jury concluded that the elevator caused the accident, that Short was not at fault, and we have no basis to make a de novo determination otherwise.
In the absence of any warning of a potential leveling problem, we feel a passenger is entitled to presume that the elevator will level properly.
When there is evidence before the jury which, upon its reasonable evaluation of credibility, furnishes a factual basis for its finding, we will not disturb that finding absent manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973). We are satisfied the jury had sufficient evidence for its conclusion.
The judgment is affirmed.
AFFIRMED.
WILLIAMS, J., dissents with reasons.
WILLIAMS, Judge, dissenting.
I respectfully dissent.
I would find that the failure to level should be obvious to an ordinary passenger, especially a four to six inch difference in height as in this case. Short should have noticed this disparity. I would have allocated a percentage of fault to Short.
Furthermore, I disagree with the finding that the elevator's "repeated failure to level outweighed its social utility." There were only five recorded complaints of the elevator's failure to level. The utility of an elevator in a high-rise building such as the Pan-American Building is immeasurable. In such a building, an elevator makes thousands of stops a day. The five complaints weighed against the function of the elevator does not necessarily indicate that there existed a "danger in design."
NOTES
[1] Weber v. Fidelity and Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971).
[2] Denial of damages was affirmed in Jackson because the court found that the jury could have reasonably found that the alleged injuries were not related to the claim or because the plaintiff was at fault.